Brady, J.
The plaintiff’s testator, Charles S. Stearns, alleging bis interest as a copartner in the Sherman Publishing Company, and complaining of the acts of his associates justifying such a procedure, commenced this action, and demanded a dissolution of the copartnership; the appointment of a receiver, with the usual powers; an accounting by the defendants; and an injunction. The defendants denied the existence of a copartnership, but admitted the execution of the instrument of which the alleged partnership was predicated, and the transaction of business under it. They substantially admitted that the plaintiff was discharged by order of the defendant Sherman, which was carried out by the defendant La Bree. The reason assigned for this act was the neglect of the plaintiff’s testator, or his failure, to perform his part of the agreement, and to devote himself to the interests of the joint enterprise provided for by it, and they asserted that the discharge was therefore the exercise of a legal right; the defendants treating the plaintiff as an employe whose rights and obligations were those, and those only, springing from the relation of employer and employe. The learned justice presiding in the court below found in favor of the plaintiff on all the issues, and adjudged that his expulsion from the office or business place of the Sherman Publishing Company, and by which he was prevented from participating in its business, was unjustifiable; and, further, that he had not violated the agreement which as to him was still in force, and that he was entitled to a quarter interest in the profits arising from the business.
The Sherman Publishing Company was practically the successor of Stearns & Co., a firm which had for several years existed under that title, and which was the possessor of wood-cuts, electrotypes, and illustrations relating to the late civil war, so called. The agreement under which the plaintiff claimed is dated the 4th February, 1884, and was for the publication of an illustrated history. By the agreement the defendant Sherman was to provide the necessary funds for the publication of the first edition, of 3,000 volumes, of the history mentioned, and to continue the publication of it, but as the sole owner, except as provided by the stipulation in the agreement contained. The plaintiff’s testator and the defendent La Bree were to devote their time and business capacities in furtherance of the enterprrise, in consideration of each receiving one-fourth of the net profits arising from the publication to be made. The business was to continue until January 1,1894. It was mutually agreed that the plates and illustrations were to be furnished by Stearns & Co., owners and former publishers of the Pictorial War Record, without any charge or cost to the new company. It also provided what sum the plaintiff’s testator and the defendant La Bree should respectively be allowed to draw weekly, and that such amount should be deducted from their respective quarter interests. It was also mutually agreed that, upon the termination of the contract, the plaintiff’s testator and the defendant La Bree should be allowed and paid their respective proportion of the cost of the publication of such of the completed volumes as might be on hand and unsold, or that might be in course of publication. And it was further agreed as follows: “It is further mutually agreed by the parties to this contract that should the parties of the second part and the party of the third part, or either of them, fail to regard’, carry out, and perform their designated stipulation and their covenants, through and by which they have become parties in interest of the publication and sale of said illustrated history, or "any part of them, except only in case of sickness, then such delinquent’s connection and interest in said publication shall at once cease, and he be paid his proportionate share of the profits that is due him at the time of such delinquency, if any, after which said delinquent party shall have no further right, share, or interest in or to said publication.”
*632 The contract between the parties has been partially stated in detail, for the purpose of showing that it related to a joint enterprise, in which the respective interests of the parties were stated; the defendant Sherman at first contributing the capital, and the others assuming the burden and responsibility of conducting the business. The defendant Sherman was professionally engaged much of his time as a physician, and paid little personal attention to the joint business. . It is true that the result of a failure by either the plaintiff’s testator or the defendant La Bree to discharge their assumed obligations, except only in case of sickness, was that the delinquent’s connection with the business should cease at once, and he be paid his proportionate share of the profits then due him. It was not stated in what manner such delinquency was to be determined, or by whom it should be declared, and the proper course would have been an appeal to some court of competent jurisdiction to investigate and determine as to the alleged failure, and whether the delinquent was entitled to his portion of the profits, if any had then been made; but this was not done, as we have seen. The joint enterprise thus established between the parties has all the necessary elements of a partnership, the test of which is a community of profit,—a specific interest in the profits as profits, in contradistinction to a stipulated portion of the profits as a compensation for services. 3 Kent, Comm. 25, note 6; Walden v. Sherburne, 15 Johns. 409; Leggett v. Hyde, 58 N. Y. 279, and eases cited; Marston v. Gould, 69 N. Y. 225. Here the parties were all interested in, and their gains were controlled by, the profits; and in January in each year a statement of the situation of the business was to be made, the books to be kept by the company being at all times open to the inspection of the parties. Assuming, therefore, that the plaintiff’s testator was delinquent, the defendants were not justified in arrogating the jurisdiction of a court of equity, or of ejecting the plaintiff’s testator, which was the act substantially committed by them.
If this view be questionable, however, having assumed the power, it was incumbent on them to satisfactorily establish in this action the propriety of preventing the plaintiff’s testator from participating in the business, and in such manner as the agreement provided. There is no pretense that the defendants paid the plaintiff’s testator his proportion of the profits up to the time he was expelled, if any were due, or that prior to his expulsion or subsequent thereto any proper investigation leading to that end was adopted by them, and they failed to show as well the asserted delinquency, the learned justice in the court below having found against them on that issue, and on conflicting evidence. It is to be observed, also, that it was not necessary to determine whether or not the agreement between the parties constituted a co-partnership eo nomine, to authorize a judgment for the plaintiff. It appears conclusively from the agreement between the parties that a joint interest in a joint enterprise was created, and by analogy, as said in Marston v. Gould, supra, the same remedy in equity may be had for a violation of the trust by either. The same remedy exists against one occupying the position of a quasi partner, involving the same duties and obligation.
The plaintiff’s testator was, it must be said, sometimes apparently derelict, but this arose from illness, to which for periods he was subject, and this infirmity was doubtless known and contemplated, from the fact that he and Sherman had been partners, and that the agreement excepted, from the duty of devotion to the business, periods of illness. The error of which the defendants’ counsel complains arose chiefly from his persistent efforts to embrace in this controversy the acts of the plaintiff’s testator in reference to the affairs of Stearns & Co., and which in an action or proceeding relative to that business would be subjects for judicial consideration; and most of the objections and exceptions, therefore, taken herein on behalf of the defendants, indeed all that have any merit, are based upon that, relation. The impropriety of this is too apparent to require refutation. If tire plaintiff's testator overdrew his ac *633 count, or appropriated property belonging to the firm of Stearns & Co., while a member thereof, that could not avail the defendant La Bree, who was not a member of that firm. He could not employ it as a counter-claim, or as a defense in any form. The delinquency contemplated by the agreement, as we have seen, relates to the new firm, and the stipulations and their covenants thereunto relating, and all that the plaintiff and the defendant La Bree could be called upon to answer for was a violation of one or more of them. It is only necessary to say, in addition, that the long litigation herein, as indicated by the volume of testimony taken, arose, as suggested, chiefly from the attempted commingling of the affairs of the two firms, and the alleged grievances of the defendant Sherman in relation thereto, with which the defendant La Bree had nothing to do. For these reasons the judgment appealed from should be affirmed, with costs. All concur.